Good morning. May it please the Court, my name is George Haridi, appearing on behalf of the petitioner Iqbal Singh Chhokar. Mr. Chhokar is appealing the Board's decision relating to his asylum and withholding claims, as well as the Immigration Judge's decision relating to his Convention Against Torture claim. Credibility is not an issue in this case. The Immigration Judge deemed Mr. Chhokar a credible witness. Would you please speak up a little? I apologize, Your Honor. Thank you. The credibility of the petitioner is not an issue in this case. What is at issue is whether Mr. Chhokar established a nexus between the harm he suffered and at least one of the enumerated grounds. Let me just ask you straight off, on the second and third arrests, why wasn't this a legitimate prosecution of terrorists or suspected aidor and abettors of terrorists? Well, first, Your Honor, to better understand the reasons, the motivation for the petitioner's arrest during the second and third occasion, which is essentially what we're doing here, we're trying to find out what the police's motive was for arresting him. We need to look at his first arrest. I think the Board improperly dismisses the significance of his first arrest. He was clearly arrested on the first occasion, along with his father, on account of his father's political activities. During that time, his father was threatened by the police, threatened to kill his father and his entire family, including Mr. Chhokar, if he did not quit his activities, his political activities on behalf of, I believe at that time, was the Akali Dalman, I think it was prior to joining the Akali Dalman. However, the petitioner's father, as well as the petitioner, had engaged in lawful participation in the boycotts of the 1992 elections and voiced their support for the Khalistan movement. So when we look at the initial arrest, that was when the petitioner was initially targeted. He was arrested three times within a span of about two years. The second arrest, which is what we're looking at to establish whether or not there was persecution, in which I don't think there's an issue as to whether or not the beatings he suffered rise to the level of persecution. But the motivation on that occasion, petitioner argues, obviously, was not pursuant to a legitimate police investigation. The Board- Not at all? Excuse me? Not at all? No, Your Honor, because- You have to decide whether it's one or the other? Well, in the alternative, a petitioner would, of course, argue that the motivation was in part on account of one of the five enumerated grounds and that even if the legitimate police investigation was one of the motivations, it wasn't the sole motivation. How do we sort this out? That is to say, by his own testimony, which I agree with you, where we believe because the IJ didn't make an adverse credibility determination. Yes, Your Honor. He believes in the Sikh cause. Yes, Your Honor. And on the second occasion and on the third occasion, he was first off scouting for an escape route. And the second, he was helping two people to escape. That's correct. There's no question, but that's what he's doing. Yes, Your Honor. And there's also, I think, little question that that's what the police suspected him of doing. Well, I disagree, Your Honor, because the Board is saying that the police on the second occasion- Now, we're talking about the second occasion. The third arrest, I concede that there might be an issue. But in the second arrest, the Board is suggesting that there was a reasonable suspicion. I mean, in this case, petitioner- A suspicion of what? A suspicion that he was involved in criminal activity. Well, he was. Well, he was, yes. But the police didn't know that. Well, how do we know they didn't? Well, because based on the facts of the case, he was on a scooter driving at night. The police take him to the police station. They just apprehended him on the spot. Before you get to the police taking him to the police station, he was driving on a scooter at night. And by his own testimony, nobody else is out there- Because they're afraid. Because they know that the police are out there and they are afraid. And the police have some reason to think, well, you know, this kid's out here on his scooter when nobody else is. And it looks to us as though it's at least a reasonable guess he's scouting for an escape route. But it's not illegal to be out. To suspect somebody of a criminal activity because they're out at night riding a scooter is not reasonable. Wait a minute. We don't have the police here to get all these cases about probable cause. I'm not asking the court to infer anything, Your Honor. Okay. But you are asking us to infer a motive. Now, I would agree- No. No, because when he's taken to the police station, Your Honor- I apologize for interrupting- But when he's taken to the police station, he's accused- They mocked the Khalistan movement. I understand that. That's what I was getting to. Just let me finish my question. I'm trying to understand what you are saying. We're looking at motive, and that's why I keep asking. I will ask again in any event. Are you trying to persuade us that their only motive was political, or are you trying to rely on our mixed motive cases? Well, I was initially going to say that I would argue for mixed motive analysis, but I do also challenge the board's finding that there was a reasonable suspicion as to the second arrest. But then I don't understand that. We can look to their verbal commentary when they are beating him and spreading his legs and doing all that and derive whatever we may from that. But when you have someone who has admitted that the act in which he was engaged when picked up was aiding a bombing suspect, it's a little hard to say that the IJ and the BIA are off the reservation to infer that there was absolutely no prosecutorial or investigative motive in the actions of the police. Well, I understand that, Your Honor, but if we're still looking at what the police knew and what their motive was for the second arrest, I don't think it's there. I don't think they have a reasonable suspicion. Well, that's what I was saying. The police aren't here, and we get all those kinds of cases domestically, and the defendant is always saying there's no reasonable suspicion and we're always having to defer to the police or taking into account in any event what they say, their perspectives. We don't have that here. But we have the objective fact that the gentleman was, in fact, on both occasions, actively working to aid or abet whatever they want to call it, terrorist activities. I don't see how we can just say, well, you know, there was no reasonable basis. Well, it's hindsight, though, Your Honor. Yeah, it was reasonable when we look at it in conjunction. Because he was engaged in what they thought he was doing. Well, I'm saying that he was arrested on a mere pretense because he had been an individual who had been arrested already on account of his father's political activities. What difference do you think it makes to your case if you can only establish that it was partly political and partly? What is your concern there? My concern is that if it's reamended, it might be denied as a matter of discretion. Do you want us to find, based on this record, that it was pretextual and it was only political? Yes, Your Honor. And the alternative, I'd be asking for a mixed motive analysis. But this is a complicated question somehow, and I'll ask the government a variation on that same question. It seems to me inescapable that the prosecution of this guy is political, even if it's a legitimate investigation in the sense that they had very good ground to believe that he was scouting for an escape route. The entire struggle is political from both sides. I completely agree, Your Honor. So what we do with something that I think from the government side is obviously and inescapably political, but the government, assumed for an hypothesis, is investigating what is criminal activity under the laws of India. Assume that it is both political from the standpoint of the government, which I think it inescapably is, but also that the government has good ground to believe that he has committed a crime in furtherance of his political aims, with which the government disagrees. What then? If it's both? It's both. Right. I mean, both things are true. It's political from the standpoint of the government, but it's also a good faith criminal investigation of activity they think he undertook in furtherance of his political aims. Well, then, pursuant to mixed motive analysis cases, I think a remand is necessary. I think you need to find a nexus. To determine what? Well, I think a nexus is necessary. I think based on the facts of the case, if you find that both are true, then the nexus has been established and the case must be remanded for further consideration of his asylum claim. Now, at that point, there might be an issue. And he wins if he can prove what? And on remand, he wins if he can prove what? Well, if he can prove that he should be granted asylum as a matter of discretion. Because I think the immigration judge has already ruled on future prosecution. You say that if both things are true, number one, that it's political from the standpoint of the government, and number two, it's a bona fide investigation of criminal activity, he is eligible for asylum? Yes. You want us to remand simply for the exercise of discretion? Well, yes, Your Honor, because future prosecution has already been determined in this case in the sense that the immigration judge made a ruling on future persecution, but the board did not address it. But that means that every revolutionary violating the laws of his or her own country in the conduct of the revolution is automatically eligible for asylum in this country. Well, Your Honor, if the government wants to find that this individual committed a terrorist activity, they can pre-term it as an application. That's not what was done here. If the immigration judge then wants to deny asylum as a matter of discretion, it's the immigration judge's authority to do so. We have those avenues in place to prevent what I think the Court is concerned here. And while I'll let the others. Why don't we use your time. Let's hear from the government, and then we'll give you a little time. Thank you, Your Honor. Did the government ever file a formal charge against him? The Indian government? Yes. No, Your Honor. Here, the government ---- Is that a key to your argument? Yes, it is. I don't know if it's a determinative factor based on the case law in this Court. However, the fact that no evidence was brought forward against Mr. Chokhar as far as his testimony ---- No formal criminal charges were ever filed against him. That's right, Your Honor. If they had a reasonable suspicion ---- My question. Thank you. Thank you, Your Honor. And we'll give you time for rebuttal. Thank you. Good morning. May it please the Court. Jamie Dowd on behalf of the Respondent Attorney General. I want to start by pointing out that the Petitioner has to show here that the evidence is so compelling that the Board could not have made the conclusion that it made. It's clear that the substantial evidence does support the Board's finding. As to the first arrest, the Board found that no persecution or no harm resulted in that. And I'd like to point that out. Also to point out that the immigration judge found that there was no evidence that the father was ever a member of a political group, that Mr. Chokhar did not present evidence that his father was a member of ---- I can't remember the exact name of the group, but that he alleged was the reason that they had arrested him in the first instance. For the second ---- I don't think that the Board, when they reviewed, didn't they just kind of blow past the first arrest that suggested they simply said there was no torture there, so we're not even going to look at that? Well, they did. It was a footnote. They said because no harm resulted from the first arrest. Taking things a little out of context, isn't it? I mean, in other words, if you're trying to find out this was the same police group, wasn't it? Presumably. Yeah, so, I mean, isn't there some merit to Petitioner's argument that you can't just ignore the fact of the first arrest if it's a course of conduct? No, Your Honor, because the Petitioner has to show two things, one that there was persecution and two that it was on account of a protected ground. There was no persecution. Well, wait a minute. But that's sort of begging the question. That's the point. He's saying there are three arrests within the space of two years by the same police group, and in the first one, because they don't abuse Mr. Choukar, we won't even look at that or consider it. And yet that was overtly political, was it not? Well, I think the board's finding was proper when you look at the three arrests cumulatively because there was no, like I said, there was no evidence. Mr. Choukar alleged that the arrest was the result of political activities that his father had engaged in. There was no evidence in the record that his father was politically involved. Well, did they go through? Is that what the analysis was of the board? The board did not find that. No, they didn't do that at all. They did it on the ground that there was no persecution. So how can we now say, well, they did it because they based it on the fact that there was no evidence of the father? Well, the board did affirm the immigration judge's opinion as to things that the board's opinion did not address. Well, it affirmed, but it, well, okay, I won't be. All right. Counsel, you said that there was no indication that the father was a member of any political party. As I read the record, the administrative record, 81, his father joined the Al-Khalid al-Man party, which supports the creation of Khalistan. Am I incorrect in reading that? Well, that was his testimony, Your Honor, yes. But there was no record evidence that his father was a member of any particular group. All right. But there was evidence. That was his testimony. All right. Thank you. As to the second arrest, as the court pointed out, it's clear that that arrest was incident to a lawful police investigation. Now, I'm having trouble with this, and I may be a little bit dense. I'm trying to distinguish this case from Singh v. Ilkert or Ilkert, which is our decision at 69F3rd. In that case, we found eligibility for asylum when the police appeared to have had some reasonable suspicion that the petitioners were engaged in illegal Sikh activity, but they were wrong. Why was that case eligible for asylum when the police were, at least I read the case, from a police standpoint, engaged in a legitimate criminal activity? It just turned out, excuse me, in a legitimate criminal investigation, it just turned out that they were wrong. Here, the police, I'll hypothesize, are engaged in a legitimate criminal investigation. It turns out that they're right. What's the difference? I mean, does it matter that in one case they're right and in one case they're wrong because they're doing the same thing and for the same purpose? I agree with your reading, Your Honor. And the Board does a pretty, what I think is a good analysis of the case in terms of the fact that I don't think it matters whether or not the police investigation was wrong or right. I think what matters is that it's- Well, if that's the case, why doesn't this petitioner simply win under Singh v. Ilkert? Well, because in the Singh case, it's clear that while the petitioner in that case was under arrest and while he was being beaten in whatever manner, the police were accusing him of belonging to a certain group. There's no evidence that that took place here. It's very clear, and Mr. Chokhar testified, that during the May 20 arrests, the police specifically were questioning him about any information he had about the bomb blast that killed the police inspector. It's clear that he had information about that and that he lied to the police about the information that he had and that that's the information they were trying to get from him. There's no evidence that police were accusing him of belonging to any guerrilla group or a terrorist group, him specifically. No, I think there's ample evidence. The entire premise of the investigation is that he's an activist in furtherance of the Sikh cause. I mean, that's the crime they're charging him with, or that's the crime they're suspecting him of. I disagree, Your Honor. I don't think the record shows that they were charging him with being involved. What they thought he was doing was scouting for an escape route for someone who had been a Sikh separatist bomber. It's inescapable from that that he is seeking to assist the Sikh separatists. Therefore, what else do you need to impute motive to the police but that they are trying to get at him because he's engaged in what they view as illegal activity but in furtherance of the Sikh cause? Well, I think you have to separate the two, Your Honor. There's no evidence that the police were accusing him of being involved with the Sikh cause. The evidence is they were accusing him of being involved in illegal activity, aiding a terrorist. Aiding the Sikh cause. But not aiding the Sikh cause, just aiding a terrorist. What's the difference between the Sikh cause and terrorist? Well, I would say it's clear from the record that Mr. Chokhar did not even know the party who had been involved in the bomb blast, that he was asked by a friend of his to simply go out and check out police barricades. He knew exactly what the bomb was. The bomb killed an agent of the Indian government who had been particularly active against the Sikhs. Correct. You're simply not facing up to the evidence here and answering what I think is the question, how do I differentiate between an investigative activity in Ilkert, which allows for asylum, and here where, at least as your argument, it does not. And you're saying the difference is not because they were right to suspect him and they were wrong to suspect Singh. But if that's not the difference, I don't understand how there is a relevant difference. I'm sorry. Perhaps I'm just not explaining it in a clear way. But I think it's clear that, and as the board's decision states, in seeing the police, while questioning Mr. Singh during the arrest, falsely accused him of being involved in a certain group. And that was. . . Under this arrest, while they were beating him and torturing him, they said, you're not going to get Khalistan, we even beat you like this, and then you can go up there and make Khalistan up there. Why isn't that a political statement? I mean, torturing him with wanting to create the Sikh state of Khalistan. Well, I'm not sure I even understand what those statements mean, Your Honor. But I think it's clear from the arrest and from Mr. Chokar's own testimony that the police were questioning him during the May 20, 1993 arrest based on his involvement in helping this other party escape police or escape the rest, basically. That he was out on a deserted street in the middle of the night scouting police checkpoint locations. Clearly that's a suspicious activity. They arrested him, they took him in, they questioned him. He lied about the information that he had. And once they didn't get information from him, he was released. Well, he was bribed. They were bribed. Let me ask you this question, could I? Assuming that there were the, you say you don't understand what the Khalistan references were, let's suppose that the investigation was directed at finding the terrorist bomber, but it was also he was being beaten and stretched out the way he was, in part because of his presumed association with the Sikh revolutionaries. Now, what's the government's position there where there's a mixed motive on the part of the police? Well, the government's first position would be that there was not. I understand. I'm asking you to assume that because we're running out of time. Well, secondly, I think for purposes of the on account of analysis, the court has to look at four factors. Number one, whether or not he was a victim of persecution. So we've said that if it doesn't have, you know, it's not all or nothing. And even the board recognizes that there can be mixed motives. What is your position, aside from going through the analysis, what is the position? The petitioner seems to be concerned that if we were to conclude there were mixed motives here, that somehow the relief below would be different. So what's the government's position on that? Well, I'm not sure that I agree with the petitioner's analysis that the relief below would be. I think if under this court's precedent, if the court finds that there was a mixed motive in remands, well, as the petitioner pointed out, aside from denying based merely on discretionary basis, I'm not sure that the relief would be any different. If the board decided not to deny on a discretionary basis, then the petitioner would get relief based on this court's precedent if a mixed motive was found. That was my understanding. Okay. Now, can I just – I know you're out of time. I wanted to just address the convention against torture issue. Does the government take the position that the 180-degree spreading of the legs that was engaged here is or is not torture? Well, I can't say that I would take a position on whether or not that constitutes torture. I would point out that the immigration judge found – she found – she said there were changed country conditions. Is there any dispute that if there was some question about whether that aspect was faulty, that is the changed country conditions, that the spreading of the legs, the 180-degree spreading of the legs does qualify as torture? Well, I guess I would answer that by saying if that were the case, that's not necessarily determinative of the torture claim. It's just because he might show that on that one instance that constituted torture, which we would argue that it does not. Are you saying there was no torture in this case? I'm not sure that that was the finding below, so I wouldn't argue that. It didn't seem to be the finding. It seemed to be changed country conditions. Well, that was – my understanding of the immigration judge's finding was twofold. Number one, that he hasn't been in India since 1996, so that he can't show it's more likely than not that anyone would be interested in torturing him. And number two, in relying on the State Department report to show that country conditions have changed to such an extent that there's no evidence of a likelihood of torture. Even though they talk about the 180-degree torture or spreading of the legs in Punjab in that same report? Yes, Your Honor, based on the immigration judge's finding, yes. Okay. Thank you. Thank you. Okay, thank you. Let's put a minute on the clock for rebuttal. Counsel, would you comment on the torture claim, please? Yes, Your Honor. I wanted to say something about convention before I left today. It is Mr. Chokhar's opinion through counsel that the immigration judge did not conduct any meaningful analysis of the CAT claim. She merely cited the general improvements as delineated in the country condition reports. She does not say how relocation is reasonable or possible in this case. She does not address the torture he suffered. She does not address the evidence that he submitted in support of his assertion that the police are still inquiring into his whereabouts. This is a situation where a petitioner was tortured on his third arrest to the point of unconsciousness. I think that clearly rises to the level of torture. He expressed by his credible testimony that he fears that he would be tortured again if he returned to India. I also wanted to comment a little bit about the evidence of the father's membership is not an issue in this case because credibility is not an issue. Therefore, when petitioner testified that his father was a member of the Kali Dal, that should be the end of the story. Furthermore, his father submitted an affidavit expressing that he's a member of the Kali Dal mind. He also expresses on number seven of his affidavit that in corroboration of petitioner's testimony, that he was not arrested on the second occasion pursuant to any legitimate police investigation. And you explain. I still don't understand your mixed motive concern here. Excuse me. What is your mixed motive concern here? My mixed motive concern. I think that in this case, to be completely honest with the court, that the case was denied on the wrong issue. I don't think this case can be denied on the issue that there was no nexus established by the petitioner between the harm he suffered and one of the numeric grounds. The facts in this case raise red flags in my mind on other reasons. I mentioned them earlier. The fact that he possibly can be construed as having materially supported militants. That his case could have been pre-terminated on that ground. It wasn't. Also, his case could have been denied for discretionary reasons. That wasn't the case either. Here, the board clearly denied this case on the wrong grounds. And that's pretty much it. So what remedy are you asking from us? Oh, I'm asking for a remand to the extent that petitioner has established statutory eligibility for asylum. And? And to direct the Attorney General to either grant or deny. Discretion and then withholding removal if there's past persecution as a presumption of? Yes, he would be qualified for mandatory withholding, yes. All right. And what about cap? Yes, Your Honor. As I said, I don't think that the immigration judge conducted any meaningful analysis. I mean, you have to go through. All right. I heard that answer. When Judge Fisher asked you what you were seeking, you didn't mention that. The Convention Against Torture at all. Yes. We would be requesting conventionally alternative. Thank you. Thanks. Okay. Thank you very much. Thank both counsel. The case of Chilkar v. Ashcroft is now submitted for decision. The next three cases which are.
judges: D.W. Nelson, W. Fletcher, Fisher